The Honorable Jamal N. Whitehead

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| B&G FOOD NORTH AMERICA, INC., | Case No. 2:24-MC-00014-JNW |
| Plaintiff, | **INSTITUTE FOR ENVIRONMENAL HEALTH, INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE SUBPOENA** |
| v. | |
| KIM EMBRY and ENVIRONMENTAL HEALTH ADVOCATES, INC, acting as enforcement representatives under California Proposition 65 on behalf of the State of California, | |
| Defendants. | |

## **INTRODUCTION**

The Institute for Environmental Health, Inc. ("IEH") provides independent laboratory testing services.[1]  Although it started in Seattle in 2000 with a single laboratory, it now has more than one hundred locations and operates in countries throughout the world.  Its clients include some of the biggest companies in the food industry.  It has previously performed testing services for both plaintiff and defendants.

---

[1] *See, generally*, www.iehinc.com.

IEH'S OPP TO PLAINTIFF'S MOTION TO ENFORCE - 1
Case No. 2:24-MC-00014-JNW

INSTITUTE FOR ENVIRONMENTAL HEALTH, INC.
15300 Bothell Way NE
Lake Forest Park, Washington 98155
(206) 522-5432

Plaintiff B&G Foods North America, Inc.'s ("B&G) faulty premise that IEH would jeopardize its credibility and falsify results for defendants finds no room in logic – or *any* evidence – yet Plaintiff continues to disparage IEH with baseless attacks in its pleadings, including those before this Court.  Though this case has been ongoing since 2020, all of the assertions made against IEH are premised on B&G's self-serving allegations to try to construct some "sham" litigation theory against defendants.  But the documents IEH has in its possession – and has produced – do not support such a theory.

IEH has complied with the subpoena.  IEH conducted a reasonably diligent search for the material requested, produced the responsive material it found, conferred with B&G to explain its production, and has offered its corporate designee for deposition on three separate occasions – which B&G cancelled (wasting IEH's time and effort in preparation).  The wrongheaded notion that IEH is withholding "hundreds of documents" – or is otherwise engaged in some nefarious scheme with defendants – is false.  B&G's motion should be denied.

As B&G has engaged in extensive discovery motion practice in this matter against defendants and other non-parties, the Magistrate Judge in the Eastern District of California overseeing this matter (the Honorable Deborah Barnes) is well versed in the substantive nature of this dispute and B&G's conduct in discovery.[2]  Indeed, B&G has already filed a motion against IEH in that forum – a motion Judge Barnes denied.  IEH recognizes the judicial economy in

---

[2] After denying numerous discovery motions filed by B&G, Judge Barnes made clear B&G "should be prepared for an award of monetary sanctions" if it files another "unmeritorious discovery motion." *B&G Foods North America, Inc. v. Kim Embry and Environmental Health Advocates*, Inc, No. 2:20-cv-00526-KM-DB (E.D. Cal.) (the "Action"), Dkt. 164 at fn. 5.

IEH'S OPP. TO PLAINTIFF'S MOTION TO ENFORCE -1
Case No. 2:24-MC-00014-JNW

INSTITUTE FOR ENVIRONMENTAL
HEALTH, INC.
15300 Bothell Way NE
Lake Forest Park, Washington 98155
(206) 522-5432

transferring this matter to the Eastern District of California for consideration and provides its consent to do so if this Court deems appropriate.[3]

## I. STATEMENT OF FACTS[4]

### A. IEH's Relationship to the Parties

IEH tested approximately 380 products for Defendants in this matter in 2018 and 2019 for acrylamide.[5]  As part of the process, defendants filled out sample submission forms along with the products they would like to be tested.  *See id*.  On a few occasions, defendants emailed questions regarding the tests.  *See id*.  After conducting each test, IEH provided a certificate of analysis detailing the results.  *See id*.  Without further instruction from a client, IEH disposes of the samples it tests approximately two weeks after it issues a certificate of analysis.  *See id*.  Following this policy, IEH disposed of all samples it tested for defendants.  *See id*.  IEH was not engaged by defendants for any other purpose.  *See id*.

In 2020, recognizing that defendants had an outstanding balance, IEH sent a demand letter to defendants demanding they pay the outstanding sum owed.  IEH communicated with defendants regarding this debt.  *See id.* at ¶18.

In 2021, IEH received a subpoena from B&G who was defendant in a state court proceeding in California (where defendants in the Action were the plaintiff).  IEH produced

---

[3] IEH's Motion to Consent to Transfer this matter pursuant to Fed. R. Civ. Proc. Rule 45(f) ("Motion to Consent") is being filed contemporaneous to this filing.  That motion is set for consideration on April 12, 2024.

[4] IEH incorporates facts asserted in its Motion to Consent to any extent they are not stated herein.

[5] *See* Declaration of David E. Crowe in Opposition to Plaintiff's Motion to Enforce Subpoena and in Support of IEH's Motion to Consent to Transfer ("Crowe Decl.") at ¶11.

IEH'S OPP. TO PLAINTIFF'S MOTION TO ENFORCE -2
Case No. 2:24-MC-00014-JNW

INSTITUTE FOR ENVIRONMENTAL HEALTH, INC.
15300 Bothell Way NE
Lake Forest Park, Washington 98155
(206) 522-5432

documents to B&G pursuant to that subpoena and communicated with both B&G and defendants regarding that subpoena.  *See id.* at ¶19.

On June 16, 2023, defendants notified IEH that they had received notice that IEH would receive a subpoena in this action.  *See id.* at ¶2.  IEH has had numerous communications with both defendants and B&G due to that subpoena.  *See id.*  After Judge Barnes denied a motion related to B&G's first subpoena, B&G issued the subpoena on which it now requests this Court's enforcement.  *See id.* at ¶4.

### B.  Discovery Produced by IEH in the Action

On November 7, 2023, IEH was served a subpoena which included 37 requests for documents and 37 topics for deposition.  *See id.*  The subpoena sought compliance for documents on November 29, 2023 and for deposition on December 1, 2023 (Plaintiff later agreeing to December 7).  *See id.;* **Exhibit 4**.

On November 20, 2023, IEH provided its objections and notified Plaintiff it would be able to provide documents at the location stated in the subpoena by November 29.  *See id.* at ¶5.

IEH mailed documents responsive to the subpoena on November 24, 2023 and they were received on November 27, 2023.  *See id.*  That production included:

- emails between IEH's laboratory staff and defendants related to the testing IEH conducted;
- emails between IEH and defendants related to the billing dispute;
- emails between IEH and the parties regarding the California state court action;
- emails between IEH and the parties relating to the Action;
- a 19 page document detailing IEH's Standard Operating Procedures for testing for acrylamide;
- a 9 page document detailing IEH's policies and procedures for sample receipt, login and shipping;

IEH'S OPP. TO PLAINTIFF'S MOTION TO ENFORCE -3
Case No. 2:24-MC-00014-JNW

**INSTITUTE FOR ENVIRONMENTAL HEALTH, INC.**
15300 Bothell Way NE
Lake Forest Park, Washington 98155
(206) 522-5432

- a copy of IEH's certificate of accreditation from the ANSI National Accreditation Board regarding the testing at issue (in its November 20 letter – IEH also directed B&G to where to find IEH's other accreditations on its website);
- the Certificate of Analysis report that included the testing done on Plaintiff's product at issue;
- invoices for testing IEH previously performed for Plaintiff;
- invoices sufficient to show the price IEH charged for its acrylamide testing;[6]
- an excel spreadsheet which detailed the quantitative analysis performed on the testing on Plaintiff's product; and
- three excel spreadsheets which provided summary of data for the testing conducted for defendants. The three excel spreadsheets for each test conducted by IEH for defendants details numerous items including the customer, the test performed, test method used, the test result[7], the lab analyst performing the test, the date the sample was received, the description of the sample, the analysis date, and the condition of the sample when received.

*See id.* at ¶6.

On the December 6, 2023, **Plaintiff cancelled the deposition scheduled** for the next day. *See id.* at ¶7 and **Exhibit 5**.

On December 13, Plaintiff emailed IEH re its production. *See id.* at ¶8 and **Exhibit 6**. In this email, B&G indicated it believed invoices were "agreements". Given this definition of "agreement" IEH supplemented its production. *See id.* at ¶9. IEH mailed its supplemental production on December 18. *See id.* and **Exhibit 7**. It was received on December 22. The documents IEH produced included:

- all of the invoices IEH issued to defendants;
- a few emails related to those invoices,

---

[6] In assessing the undue burden placed on IEH by B&G, it is notable IEH was only paid $220 for its services related to the testing of Plaintiff's product at issue in this Action.

[7] In reviewing any of the three spreadsheets it is clear that IEH's test results had items with low levels of acrylamide and items with higher levels of acrylamide. Of course if IEH was inflating its testing as B&G outrageously alleges, there would not be tests with low levels.

IEH'S OPP. TO PLAINTIFF'S MOTION TO ENFORCE -4
Case No. 2:24-MC-00014-JNW

INSTITUTE FOR ENVIRONMENTAL HEALTH, INC.
15300 Bothell Way NE
Lake Forest Park, Washington 98155
(206) 522-5432

- all of the Certificate of Analysis forms IEH provided to defendants covering all testing;
- all of the Sample Submission forms IEH had relating to defendants.

*See id.*

On December 20, IEH through its counsel David Crowe met and conferred with Chelsea Tirgardoon and Eric Schlabs who represented B&G.[8]  IEH detailed the supplemental documents it had mailed to B&G and explained the steps of its testing process. *See id*.  IEH explained that it often did not know where a product originates when it performs testing.  It is up to the client to describe the material and IEH provides the client its results.[9]  Accordingly, IEH could not easily identify if it had tested other products from B&G outside of that was provided by defendants.  IEH confirmed it did search for such documents (although it being unclear how such testing could possibly relate to the allegations of the Action).  *See id.*  After the conference it seemed B&G was satisfied with the responses it received.  *See id.* at ¶11.

On December 21, 2023, B&G issued another subpoena setting the deposition as agreed for January 17, 2024.  *See id.* at ¶12 and **Exhibit 10.**  On January 9, 2024, ***B&G cancelled the second scheduled deposition.***  *See id.* at ¶14 and **Exhibit 12.**

IEH agreed to another deposition date of February 8, 2024.  *See id.* at ¶15.  B&G noted the deposition on January 16, 2024.  *See id.*  On February 5, 2024, ***B&G cancelled the third scheduled deposition***.  *See id.* at ¶16 and **Exhibit 13**.

---

[8] *See id.* at ¶10.  If Mr. David Kwasniewski was on that call, he did not announce himself.  *See id.*

[9] For example, if a client wished to test a number of green beans from different producers it may not wish to have IEH know which green bean is which.

IEH'S OPP. TO PLAINTIFF'S MOTION TO ENFORCE -5
Case No. 2:24-MC-00014-JNW

INSTITUTE FOR ENVIRONMENTAL
HEALTH, INC.
15300 Bothell Way NE
Lake Forest Park, Washington 98155
(206) 522-5432

***IEH has been prepared to be deposed on three separate occasions – B&G has cancelled each agreed to date.***

## II.  ARGUMENT

As a non-party, IEH is entitled to greater protection from discovery burdens than a party to the Action. *See Dart Indus. Co. v. Westwood Chem. Co.,* 649 F.2d. 646, 649 (9th Cir. 1980); *Rollins v. Traylor Bros., Inc.*, 2017 WL 1756576 at *1 (W.D. Wash. May 5, 2017) ("[D]iscovery against a nonparty is more limited than the liberal discovery against parties."); *Kim v. NuVasive, Inc.*, 2011 WL 3844106 at *2 (S.D. Cal. Aug. 29, 2011) ("Non-parties deserve extra protection from the courts."). The "word nonparty serves as a constant reminder of the reasons for the limitations that characterize 'third-party' discovery." *Dart*, 649 F.2d at 649 (quotations omitted).

B&G's motion should be denied. As a preliminary matter, although B&G argues that it has characterized its motion as being "further streamlined following the Parties conference", Motion at 6:22-23, IEH has not heard many of the issues articulated in B&G's motion as reason it seeks to now compel discovery. *See* Crowe Decl. at ¶17. Plaintiff's motion consists of nothing more than vague assertions it thinks there are more documents (when there are not) and does nothing to describe any dispute between the parties.[10] Regardless, IEH after conducting a reasonably diligent inquiry into this matter has no further documents responsive to any of these categories. Moreover, as IEH has done nothing to prevent B&G from deposing its corporate

---

[10] Plaintiff has filed similarly styled briefing in the Action. *Cf.* Action, Dkt. 164 at 2:25-3:1, & fn. 2 (Judge Barnes finding plaintiff's briefing repeatedly insufficient because "rather than addressing each individual request with argument and analysis of why defendants' objections are without merit, plaintiff has simply provided global and general arguments. From this vague and conclusory briefing, the undersigned cannot find that plaintiff's motion should be granted."). Because most of the requests and topics stated in the motion differ from the actual language in the subpoena, IEH is providing the language from the subpoena and IEH's stated responses to the requests/topics. *See* Kwasniewski Decl., **Exhibit H**.

IEH'S OPP. TO PLAINTIFF'S MOTION TO ENFORCE -6
Case No. 2:24-MC-00014-JNW

INSTITUTE FOR ENVIRONMENTAL
HEALTH, INC.
15300 Bothell Way NE
Lake Forest Park, Washington 98155
(206) 522-5432

representative, there is no reason to compel IEH to be deposed – *it is solely B&G's fault no deposition has been had.*

### A. Information related to the condition of the subject products

**Request Number 2:**

> DOCUMENTS sufficient to show the condition of any SUBJECT PRODUCT YOU received for testing for acrylamide at the time you received them from April 2018 to present.
> *Response: IEH will produce responsive documents to the extent they exist and can be found through a reasonably diligent search.*

IEH does log the condition of the samples it receives. That information is shown in the three excel spreadsheets IEH produced in November. IEH does not take "photographs" of its samples, nor does it have other such documentation. IEH has no further documents to produce responsive to Request 2.

**Topic 2:**

> The condition of any SUBJECT PRODUCT YOU received for testing for acrylamide at the time you received them.
> *Response: IEH will provide documents in its possession, to the extent they exist, which relate to receipt of the SUBJECT PRODUCT. IEH will be prepared to discuss such documents and its general procedures.*

B&G makes no attempt to explain why IEH's response is improper. IEH has been prepared three times to respond to questions relating to this topic.

**Request 5:**

> DOCUMENTS sufficient to show the current condition of the SUBJECT PRODUCT from April 2018 to present.
> *Response: IEH will produce responsive documents to the extent they exist and can be found through a reasonably diligent search.*

IEH does not have any of defendants' samples. They were disposed of – as is IEH's normal process – shortly after IEH conducted its testing. Crowe Decl. at ¶11. IEH has provided

IEH'S OPP. TO PLAINTIFF'S MOTION TO ENFORCE -7
Case No. 2:24-MC-00014-JNW

INSTITUTE FOR ENVIRONMENTAL HEALTH, INC.
15300 Bothell Way NE
Lake Forest Park, Washington 98155
(206) 522-5432

documents relating to the product as it was received in the excel spreadsheets.  IEH has no other responsive documents to produce.

**Topic 5:**

> The current condition of the SUBJECT PRODUCT.
> ***Response:*** *IEH will be prepared to discuss its policy on disposal of testing samples.*

B&G makes no attempt to explain why IEH's response is improper.  IEH has been prepared three times to respond to questions relating to this topic.

### B.  Information Related to "Faulty Testing"

B&G does not detail what was discussed during the conference on December 20, 2024.[11] Be that as it may, IEH did address all of B&G's questions and explained the documents it had and those it did not.  *See id*.  IEH explained that it does not, in the normal course, keep track of any result which is questioned by its client and if other clients had questions regarding the testing performed for them it would be confidential to that client.  *See id*.  IEH also explained that if two different laboratories are provided the same product, but not the same sample, the fact that different results can be found is not surprising (as it is not the same sample).  *See id*.  Different boxes of the same product can have differing exposures, temperature controls, etc. which can lead to differing results.  The different results do not prove either laboratories work was "faulty." IEH explained that it was not aware of any result where it tested a sample and another lab tested the same sample and the results differed.  *See id.*  And, IEH provided all of its results for products tested for defendants.  *See id.* at ¶9.  The fact that B&G wants to characterize IEH's testing as "faulty" does not mean there is evidence to show that it is.  There is not.

**Request 8:**

> DOCUMENTS sufficient to show YOUR quality assurance policies and procedures, including without limitation all quality assurance methods YOU

---

[11] This is probably due to Mr. Kwasniewski not being present at that conference.  *See* Crowe Decl. at ¶¶10-11

IEH'S OPP. TO PLAINTIFF'S MOTION TO ENFORCE -8
Case No. 2:24-MC-00014-JNW

INSTITUTE FOR ENVIRONMENTAL
HEALTH, INC.
15300 Bothell Way NE
Lake Forest Park, Washington 98155
(206) 522-5432

  employed in connection with YOUR testing of B&G FOODS'S products for acrylamide from April 2018 to present.
*Response: IEH will produce responsive documents to the extent they exist and can be found through a reasonably diligent search.*

  IEH produced its Standard Operating Procedures it follows, its ANSI accreditation and its sample login procedures for its acrylamide testing. It is entirely unclear from its motion what else B&G believes it should receive.

**Topic 8:**

  YOUR quality assurance policies and procedures, including without limitation all quality assurance methods YOU employed in connection with YOUR testing of B&G FOOD'S products for acrylamide.
*Response: IEH will be prepared to discuss the testing procedures and methods used in connection with its acrylamide testing.*

  B&G makes no attempt to explain why IEH's response is improper. IEH has been prepared three times to respond to questions relating to this topic.

**Request 13:**

  DOCUMENTS sufficient to show YOUR policies and procedures for preventing cross-contamination of products tested for acrylamide from April 2018 to present.
*Response: IEH will produce responsive documents to the extent they exist and can be found through a reasonably diligent search.*

  IEH produced its Standard Operating Procedures it follows, its ANSI accreditation and its sample login procedures for its acrylamide testing. It is entirely unclear from its motion what else B&G believes it should receive.

**Topic 13:**

  YOUR policies and procedures for preventing cross-contamination of products tested for acrylamide.
*Response: When appropriate, IEH will be prepared to discuss the testing procedures and methods used in connection with the stated products.*

  B&G makes no attempt to explain why IEH's response is improper. IEH has been prepared three times to respond to questions relating to this topic.

IEH'S OPP. TO PLAINTIFF'S MOTION TO ENFORCE -9
Case No. 2:24-MC-00014-JNW

**INSTITUTE FOR ENVIRONMENTAL HEALTH, INC.**
15300 Bothell Way NE
Lake Forest Park, Washington 98155
(206) 522-5432

**Request 36:**

> ALL DOCUMENTS CONCERNING the industry standards for performing Proposition 65 food product testing, including ALL DOCUMENTS demonstrating your compliance with these industry standards.
>
> **Response:** IEH does not keep any such documents, to the extent any exist, in its regular course of business. IEH objects to this request to the extent it is unduly burdensome, overly broad and would cause IEH an undue expense to decipher such industry standards for all Proposition 65 food product testing. For the testing at issue in this matter, IEH's testing complied with ANSI standards and IEH will produce its accreditation for same.

As explained to B&G, IEH was not employed as an expert to opine on California law. It is a testing laboratory. Although IEH is aware that its results may be used in cases involving Proposition 65, it has no documents regarding any "industry standard" nor does IEH know that one exists.

**Topic 7:**

> The industry standards for performing Proposition 65 food product testing.
>
> **Response:** IEH objects to this request to the extent it presumes IEH is an expert on industry standards for Proposition 65 food testing. IEH has not been hired as an expert on this topic, nor is it inclined or prepared to opine on what the industry standards for Proposition 65 testing include, to the extent any exist. IEH will be prepared to discuss the testing it conducted related to the SUBJECT PRODUCT or its testing for acrylamide.

IEH stands on its objection. It is not an expert witness nor is it in the business of opining on what is appropriate under California law relating to Proposition 65. B&G provides no reason in its motion why IEH should be compelled to provide expert witness testimony in this matter.

**Topics 3, 9, 10 and 12:**

For each of these topics, IEH stated it would be prepared to testify. *See* Kwasniewski Decl. **Exhibit H**. The only reason B&G has not received such testimony is because it cancelled the deposition three times.

IEH'S OPP. TO PLAINTIFF'S MOTION TO ENFORCE -10
Case No. 2:24-MC-00014-JNW

INSTITUTE FOR ENVIRONMENTAL
HEALTH, INC.
15300 Bothell Way NE
Lake Forest Park, Washington 98155
(206) 522-5432

**Request 14:**

DOCUMENTS sufficient to show the error rate of the methodologies YOU use to test products for acrylamide from April 2018 to present.
*Response: IEH will produce responsive documents to the extent they exist and can be found through a reasonably diligent search.*

In IEH's Standard Operating Procedures for acrylamide testing, the error rate is stated.

**Topic 14:**

The error rate of the methodologies YOU use to test products for acrylamide.
*Response: IEH will be prepared to discuss such rates to any extent they are kept.*

B&G makes no attempt to explain why IEH's response is improper. IEH has been prepared three times to respond to questions relating to this topic.

**Request 15:**

All DOCUMENTS CONCERNING any test result for acrylamide generated by YOU that YOU later learned was inaccurate from April 2018 to present.
*Response: IEH objects to this request to the extent it seeks confidential information of any third party. IEH also objects to this request to the extent it is an undue burden, as IEH does not track such information in its usual course of business.*

As explained to B&G, after performing a reasonable diligent inquiry, IEH does not know of any such documents. Crowe Decl. at ¶11. Moreover, as IEH explained to B&G, the fact that another laboratory may reach a different result from a different sample does not show that IEH's result is "inaccurate", or that the other laboratory's result is "inaccurate". *See id*.

**Topic 15:**

Test results for acrylamide generated by YOU and YOU later learned were inaccurate.
*Response: IEH objects to this topic to any extent it seeks confidential information of third parties. IEH further objects to this request to the extent it seeks information that IEH does not collect or keep track of in the normal course of business and thereby requests information that does not exist and/or cannot be determined without subjecting IEH to an undue burden.*

IEH'S OPP. TO PLAINTIFF'S MOTION TO ENFORCE -11
Case No. 2:24-MC-00014-JNW

INSTITUTE FOR ENVIRONMENTAL HEALTH, INC.
15300 Bothell Way NE
Lake Forest Park, Washington 98155
(206) 522-5432

B&G makes no attempt to explain why IEH's objections are improper or why it should be made to go beyond a reasonably diligent inquiry searching for such information. As explained to B&G, after performing a reasonable diligent inquiry, IEH does not know of any such documents. *See* Crowe Decl. at ¶11.

**Request 16:**

> All DOCUMENTS CONCERNING any test results from other laboratories for acrylamide in products tested by YOU.
> ***Response:*** *IEH objects to this topic as it is vague and confusing and assumes IEH somehow collects laboratory test results from other laboratories on the products it previously tested.*

As explained to B&G, after performing a reasonable diligent inquiry, IEH does not know of any such documents. *See* Crowe Decl. at ¶11.

**Topic 16:**

> Test results from other laboratories for acrylamide in products tested by YOU.
> ***Response:*** *IEH objects to this topic as it is vague and confusing and assumes IEH somehow collects laboratory test results from other laboratories on the products it tests.*

As explained to B&G, IEH is not aware of such information and does not believe different samples are the same "product." IEH does not collect such information and cannot prepare for a deposition on laboratory results it does not have.

### C.  Information Related to Other Products

Given the nature of B&G's argument (Motion at 9:9-10:14), it is difficult to ascertain what they think they are entitled to in this category. They argue that they should receive the results of all of defendants testing from IEH; ***they already have received all such data in multiple forms.*** But – the listed requests/topic relate to B&G's products not defendants other tests. To the extent they claim IEH is limiting their production to "products in the underlying state court acrylamide cases", Motion at 9:9-10, IEH had made no such objection and has no idea what B&G is referring to. Crowe Decl. at ¶20.

IEH'S OPP. TO PLAINTIFF'S MOTION TO ENFORCE -12
Case No. 2:24-MC-00014-JNW

**INSTITUTE FOR ENVIRONMENTAL HEALTH, INC.**
15300 Bothell Way NE
Lake Forest Park, Washington 98155
(206) 522-5432

**Request 7:**

> All DOCUMENTS CONCERNING any testing of B&G FOODS'S products for acrylamide from April 2018 to present.
> ***Response:*** *IEH will produce responsive documents to the extent they exist and can be found through a reasonably diligent search.*

IEH has conducted a reasonably diligent search and found no other documents relating to B&G and acrylamide, besides the testing done by defendants. IEH explained this on December 20, 2023. Crowe Decl. ¶10. IEH has produced all of the testing done for defendants in multiple forms. There are no further documents to compel.

**Topic 6:**

> Any testing of B&G FOOD'S products for acrylamide.
> ***Response:*** *When appropriate, IEH will provide documents in its possession, to the extent they exist, which relate to such testing. IEH will be prepared to discuss such documents and its testing procedures.*

B&G makes no attempt to explain why IEH's response is improper. IEH has been prepared three times to respond to questions relating to this topic.

**Request 34:**

> All DOCUMENTS CONCERNING any testing YOU conducted on any B&G FOODS products.
> ***Response:*** *IEH objects to this topic to the extent it requires it to know whether the testing was performed on B&G FOODS products. IEH also objects to this request because B&G FOODS has numerous product lines that are not at issue in this litigation and it would be unduly burdensome for IEH to determine which possible brands may have been tested at its numerous laboratories. IEH will provide responsive documents, to the extent they exist, that it can readily determine relate to B&G FOODS. If plaintiff has reason to believe that additional testing was performed on one of its other numerous product lines, that in some fashion relate to this ACTION, IEH is willing to confer re the same.*

IEH explained that it searched for other tests conducted on B&G's products and found none additional to those conducted by defendants. IEH has produced all of defendants' test results. During the conference, B&G did not request any additional brands to be searched. B&G

IEH'S OPP. TO PLAINTIFF'S MOTION TO ENFORCE -13
Case No. 2:24-MC-00014-JNW

INSTITUTE FOR ENVIRONMENTAL
HEALTH, INC.
15300 Bothell Way NE
Lake Forest Park, Washington 98155
(206) 522-5432

makes no justification for further fishing into IEH's other clients' documents in its motion, where it only addresses documents from defendants which have already been produced.

## CONCLUSION

B&G's motion to compel should be denied. IEH has complied with the requests for documents and has made a corporate designee available three times for deposition. The Court should order no further discovery from IEH in this matter be allowed.

Dated: March 25, 2024

/s/ *David E. Crowe*
David E. Crowe (WSBA Number 43529)
Institute for Environmental Health, Inc.
15300 Bothell Way NE
Lake Forest, WA 98155
Telephone: (206) 522-5432
Email: david.crowe@iehinc.com

*Attorney for Defendant*
*Institute for Environmental Health, Inc.*

## CERTIFICATE OF SERVICE

I certify that on March 25, 2024, I electronically filed the foregoing with the Clerk of Court using the Court's CM/ECF system, which caused a true and correct copy of the foregoing to be served upon:

| **David Howard Kwasniewski**<br>Braunhagey & Borden LLP<br>351 California St.<br>10th Floor<br>San Francisco, CA 94104<br>415-599-0210<br>Email: kwasniewski@braunhagey.com | **Jofrey M. McWilliam**<br>Byrnes Keller Cromwell LLP<br>1000 Second Avenue<br>38th Floor<br>Seattle, WA 98104<br>206-622-2000<br>Email: jmcmwilliam@byrneskeller.com |
|---|---|

 s/  *David E. Crowe*
 David E. Crowe

IEH'S OPP. TO PLAINTIFF'S MOTION TO ENFORCE -14
Case No. 2:24-MC-00014-JNW

**INSTITUTE FOR ENVIRONMENTAL HEALTH, INC.**
15300 Bothell Way NE
Lake Forest Park, Washington 98155
(206) 522-5432